# MOTOR VEHICLE EQUITY LINE OF CREDIT AGREEMENT AND PLAN

Account #: 35  Credit Limit: $450.00

Approved Cash Advance Corp.  d/b/a Approved Cash Advance
Store No.: 815  Telephone: 757-833-8581  Address: 14501 J Warwick Blvd. Newport News, VA 23608

ACCOUNT HOLDER(S):
Name: shawna taylor  Telephone: ███  Address: ███ newport news, VA 23602
Name: N/A  Telephone: N/A  Address: N/A

Motor Vehicle Information: Year: 1999  Make: cadillac  Model: deville  Color: gold
Vin#: ███05661  Plate#: ███2645

| Interest Rates | |
|---|---|
| **ANNUAL PERCENTAGE RATE** | 300.00 % |
| Grace Period | If you pay the New Balance in full on or before the Payment Due Date, then no additional Finance Charges or any other applicable charges and fees will be imposed for that billing cycle. |
| **Fees** | |
| Title lien fee | You agree to pay a title lien fee of $6.00 to cover our costs each time we register a lien on the Motor Vehicle. *The fee is subject to the terms below, including the grace period.* |

In this Motor Vehicle Equity Line of Credit Agreement and Plan ("Agreement"), the words "you" and "your" mean each and every account holder who signs this Agreement. "Account" or "MVELOC" means your Motor Vehicle Equity Line of Credit account with Approved Cash Advance Corp. ("Approved Cash Advance" or "Company"). The words "we," "us," and "our" mean Approved Cash Advance.

**Account.** Upon the execution of this Agreement, we will establish an open-end line of credit for you secured by the motor vehicle described above, including all accessories, all proceeds related thereto, including all insurance proceeds or refunds of insurance premiums (the "Motor Vehicle"). You agree to provide us with the Motor Vehicle Certificate of Title, which we will hold in accordance with this Agreement. You may take cash advances from this Account from time to time, up to the credit limit and subject to the terms of this Agreement, at the Company location listed above, provided that no portion of any minimum monthly payment is past due and you are not otherwise in default. You will be required to show proof of identification in order to obtain a cash advance from this Account. All cash advances must be at least 100.00 dollars.

**Minimum Monthly Payment.** You will receive a periodic billing statement showing your balance at the beginning of the billing cycle ("New Balance"), minimum monthly payment and other Account information. You agree to pay at the Company location listed above, in cash, money order or certified funds, at least the minimum monthly payment shown on your periodic billing statement by the indicated due date ("Payment Due Date"). If a Payment Due Date is scheduled for a Sunday, legal holiday, or any other date on which we are not open for business, then we will credit any payment received on our next business day, as if it were received on the scheduled Payment Due Date. The payment must be received by our close of business in order to be credited on that day. Your minimum monthly payment ("Minimum Payment") will equal the Finance Charge as calculated and described below, plus 5.00 % of your total outstanding cash advances ("Outstanding Principal Balance") at the end of each billing cycle ("Closing Date"). You may pay more frequently, pay more than the Minimum Payment, or pay your balance in full. If you make extra payments or larger payments in one month, you are still required to make at least the Minimum Payment each month, unless you have paid your entire balance in full. Your available credit limit will be restored by the amount of the Outstanding Principal Balance you pay and will be available for future cash advances.

**Calculation of periodic FINANCE CHARGE.** We calculate the periodic finance charge for each billing cycle of your Account by applying the applicable daily periodic rate to the "average daily principal balance" of your Account (including current transactions). To get the "average daily principal balance" we take the Outstanding Principal Balance of your Account each day and add any new advances and subtract any payments and credits received that day. This gives us the daily principal balance. Then, we add up the daily principal balances for the billing cycle and divide the total by the number of days in the billing cycle. This gives us the "average daily principal balance."

**Title Lien Fee.** You agree to pay a title lien fee of $6.00 to cover our costs of registering a lien on the Motor Vehicle. You agree to pay a new title lien fee each time we are required to register a lien on the Motor Vehicle. A title lien fee will not be imposed if the conditions of the grace period are met.

Any comments or questions may be directed to Customer Service at the following toll-free number: 1-800-611-9432

EXHIBIT A

**Grace Period.** If you pay the New Balance in full on or before the Payment Due Date, then no additional Finance Charge or any other applicable charges and fees will be imposed for that billing cycle. If you do not pay the New Balance in full on or before the Payment Due Date, then the Finance Charge and any other charges/fees will be imposed on your Account and reflected on your next periodic billing statement.

**Application of Payments.** Payments are applied first to imposed and unpaid Finance Charges and fees and then to principal. If there are no imposed and unpaid Finance Charges and fees, then all payments are applied directly to principal.

**Security Interest.** You hereby grant us a security interest pursuant to the Uniform Commercial Code in the Motor Vehicle. **YOU COULD LOSE THE MOTOR VEHICLE, AND ANY MONEY YOU HAVE PUT INTO IT, IF YOU DO NOT MEET YOUR OBLIGATIONS UNDER THIS AGREEMENT.**

**Right to Reappraise Motor Vehicle, Request Income Information, and Duty to Inform About Change in Circumstances.** The credit limit established for your Account is primarily based upon your income and the value of the Motor Vehicle. You agree we have the right to reappraise the Motor Vehicle and/or demand proof of your current income from time to time, including but not limited to, each time you request a new cash advance. You understand and acknowledge that your credit limit may be affected by the reappraisal and/or current income information. You agree to provide access to the Motor Vehicle at the location where this Agreement was executed during normal business hours and within a reasonable amount of time after demand. You also agree to maintain insurance on the Motor Vehicle as required by law. You further agree to immediately inform us of any significant change in circumstances regarding your income, the value or condition of the Motor Vehicle, including but not limited to, any damage to the Motor Vehicle or any significant change in its condition, and any change in the insurance maintained on the Motor Vehicle.

**Additional Representations and Warranties.** You represent and warrant that (a) you have the right to enter into this Agreement; (b) you are at least 18 years of age; (c) you understand that no credit insurance is offered with this Agreement; (d) the Motor Vehicle is not stolen, has no liens or encumbrances against it (unless proceeds from the line of credit will be used to satisfy the liens or encumbrances), (e) you will not attempt to transfer any interest in or seek duplicate certificate of title to the Motor Vehicle until any balance is paid in full; (f) you will not permanently remove the Motor Vehicle from your current state of residence while any balance remains unpaid on your Account; and (g) you will notify us immediately in writing of any change of your address or telephone number.

**Default and Right to Cure.** You will be in default under this Agreement: (i) if you fail to make a required Minimum Payment by its Payment Due Date; (ii) if you fail to timely comply with or perform any other obligation under this Agreement; (iii) if any representation or warranty made by you to us is false or misleading; or (iv) if you begin, or if any other person puts you, in a bankruptcy, insolvency or receivership proceeding. You may cure default by paying all past due Minimum Payments and fees or paying your balance in full prior to our submitting your Account for repossession of the Motor Vehicle. You may voluntarily surrender possession of your Motor Vehicle to us at any time by leaving the Motor Vehicle at our location listed above during normal business hours. If you voluntarily surrender the Motor Vehicle to us, we may close your Account and enforce any obligation under this Agreement, including our security interest in the Motor Vehicle at any time thereafter.

**Our Rights in the Event of Default.** If you are in default under this Agreement, we may, at our option and as permitted by law, do any one or more of the following: (i) declare your entire Account balance immediately due and payable and proceed to collect it; (ii) foreclose upon our lien and sell the Motor Vehicle according to law, including using self-help repossession; (iii) close your Account or lower your credit limit; (iv) exercise all other rights, powers, and remedies given by law; and (v) recover from you all charges, costs and expenses, including all collection costs and reasonable attorney's fees incurred or paid by us in exercising any right, power or remedy provided by law or this Agreement. We will continue to apply the applicable daily periodic rate to your Outstanding Principal Balance after acceleration and through the end of the billing cycle in which we repossess the Motor Vehicle.

**Repossession/Redemption/Sale of the Motor Vehicle.** Repossession means that, if you are in default under this Agreement, we can take the Motor Vehicle from you. To take the Motor Vehicle, we can enter your property, or the property where the Motor Vehicle is stored, so long as it is done without breach of the peace. If the Motor Vehicle is repossessed, you have the right to get it back (redemption) by paying the entire amount you owe under this Agreement (not just the past due Minimum Payments) plus the cost of taking and storing the Motor Vehicle and any other expenses that we have incurred. We will send you a written notice of sale at least ten (10) days before selling the Motor Vehicle. If you do not redeem the Motor Vehicle by the date shown on such notice, we can sell it. We will use the net proceeds of the sale to pay all or part of your indebtedness to us. To calculate net proceeds, any charges for taking and storing the Motor Vehicle, cleaning and advertising, repairing if necessary and any reasonable attorney's fees and court costs will be subtracted from the selling price. If you owe more than the net proceeds of sale, you will continue to owe this amount. If you owe less than the net proceeds of sale, we will return the excess funds to you within a reasonable time. The Company will take reasonable measures to remove personal articles from the Motor Vehicle prior to its sale but shall not be responsible for personal articles that may be inadvertently left in the Motor Vehicle when sold.

**Joint Liability.** If more than one person signs this Agreement, each of you is jointly and severally liable. We may enforce our rights against one of you without affecting our rights as to the other. We may also release one of you without releasing the other.

Any comments or questions may be directed to Customer Service at the following toll-free number: 1-800-611-9432

**Cancellation.** You may cancel your Account at any time by notifying us in writing that you wish for your Account to be closed and by paying your entire Account balance in full. If we in good faith believe that we are in jeopardy of not being repaid as agreed, then we may suspend making future cash advances on your Account at any time and in our sole discretion. If your Account is in default we may decide to close it at any time. If there is no balance on your Account for 12 consecutive billing cycles, then your Account will be automatically closed.

**Amendments.** You agree that we may change any of the terms of this Agreement, including but not limited to the method of computing all Finance Charges and the applicable daily periodic rate at any time. If we change the terms (unless the change reduces the Finance Charges, daily periodic rate, and/or Minimum Payment), we agree to mail or hand-deliver to you written notice of the change(s) at least 15 days before they become effective. If we make changes to this Agreement and you do not agree with these changes, you must notify us in writing within fifteen (15) days and include with your notice payment of your entire Account Balance. If you do not take these actions you will have agreed to the change(s) in the notice. Any change(s) which become(s) effective as to you will apply to all then outstanding unpaid indebtedness on your Account, including all cash advances obtained prior to the effective date of the change(s).

**General.** You shall bear the entire risk of loss or damage to the Motor Vehicle except while it is in our possession. You agree to indemnify and hold us harmless from any and all claims for property damages or personal injuries arising from the operation of the Motor Vehicle (except while it is in our possession), including but not limited to, all judgments, attorneys fees, court costs and any incurred expenses. You agree that if we grant any waiver, modification or other indulgence of any kind at any time, it shall apply only to the specific instance involved and will not act as a waiver, modification or indulgence for any other or future act, event or condition. We may delay enforcing any of our rights under this Agreement without losing them. Time is of the essence of this Agreement. This Agreement constitutes the entire Agreement between the parties and no other agreements, representations or warranties other than those stated herein shall be binding unless reduced in writing and signed by all parties.

**Governing Law.** This Agreement shall be construed, applied and governed by the laws of the Commonwealth of Virginia except that the Waiver of Jury Trial and Arbitration Provision is governed by the Federal Arbitration Act ("FAA").

### WAIVER OF JURY TRIAL AND ARBITRATION PROVISION.

Arbitration is a process in which persons with a dispute: (a) waive their rights to file a lawsuit and proceed in court and to have a jury trial to resolve their disputes; and (b) agree, instead, to submit their disputes to a neutral third person (an "arbitrator") for a decision. Each party to the dispute has an opportunity to present some evidence to the arbitrator. Pre-arbitration discovery may be limited. Arbitration proceedings are private and less formal than court trials. The arbitrator will issue a final and binding decision resolving the dispute, which may be enforced as a court judgment. A court rarely overturns an arbitrator's decision. **THEREFORE, YOU ACKNOWLEDGE AND AGREE AS FOLLOWS:**

1. For purposes of this Waiver of Jury Trial and Arbitration Provision (hereinafter the "Arbitration Provision"), the words "dispute" and "disputes" are given the broadest possible meaning and include, without limitation (a) all claims, disputes, or controversies arising from or relating directly or indirectly to the signing of this Arbitration Provision, the validity and scope of this Arbitration Provision and any claim or attempt to set aside this Arbitration Provision; (b) all federal or state law claims, disputes or controversies, arising from or relating directly or indirectly to this Loan Agreement (including the Arbitration Provision), the information you gave us before entering into this Loan Agreement, including the Applicant/Personal Information Form, and/or any past agreement or agreements between you and us; (c) all counterclaims, cross-claims and third-party claims; (d) all common law claims, based upon contract, tort, fraud, or other intentional torts; (e) all claims based upon a violation of any state or federal constitution, statute or regulation; (f) all claims asserted by us against you, including claims for money damages to collect any sum we claim you owe us; (g) all claims asserted by you individually against us and/or any of our employees, agents, directors, officers, shareholders, governors, managers, members, parent company or affiliated entities (hereinafter collectively referred to as "related third parties"), including claims for money damages and/or equitable or injunctive relief; (h) all claims asserted on your behalf by another person; (i) all claims asserted by you as a private attorney general, as a representative and member of a class of persons, or in any other representative capacity, against us and/or related third parties (hereinafter referred to as "Representative Claims"); and/or (j) all claims arising from or relating directly or indirectly to the disclosure by us or related third parties of any non-public personal information about you.

2. You acknowledge and agree that by entering into this Arbitration Provision:

    (a)    **YOU ARE WAIVING YOUR RIGHT TO HAVE A TRIAL BY JURY TO RESOLVE ANY DISPUTE ALLEGED AGAINST US OR RELATED THIRD PARTIES;**

    (b)    **YOU ARE WAIVING YOUR RIGHT TO HAVE A COURT, OTHER THAN A SMALL CLAIMS TRIBUNAL, RESOLVE ANY DISPUTE ALLEGED AGAINST US OR RELATED THIRD PARTIES; and**

    (c)    **YOU ARE WAIVING YOUR RIGHT TO SERVE AS A REPRESENTATIVE, AS A PRIVATE ATTORNEY GENERAL, OR IN ANY OTHER REPRESENTATIVE CAPACITY, AND/OR TO PARTICIPATE AS A MEMBER OF A CLASS OF CLAIMANTS, IN ANY LAWSUIT FILED AGAINST US AND/OR RELATED THIRD PARTIES.**

Any comments or questions may be directed to Customer Service at the following toll-free number: 1-800-611-9432

3. Except as provided in Paragraph 6 below, all disputes including any Representative Claims against us and/or related third parties shall be resolved by binding arbitration only on an individual basis with you. **THEREFORE, THE ARBITRATOR SHALL NOT CONDUCT CLASS ARBITRATION; THAT IS, THE ARBITRATOR SHALL NOT ALLOW YOU TO SERVE AS A REPRESENTATIVE, AS A PRIVATE ATTORNEY GENERAL, OR IN ANY OTHER REPRESENTATIVE CAPACITY FOR OTHERS IN THE ARBITRATION.**

4. Any party to a dispute, including related third parties, may send the other party written notice by certified mail return receipt requested of their intent to arbitrate and setting forth the subject of the dispute along with the relief requested, even if a lawsuit has been filed. Regardless of who demands arbitration, you shall have the right to select either of the following arbitration organizations to administer the arbitration: the American Arbitration Association (1-800-778-7879) http://www.adr.org, or National Arbitration Forum (1-800-474-2371) http://www.arb-forum.com. However, the parties may agree to select a local arbitrator who is an attorney, retired judge, or arbitrator registered and in good standing with an arbitration association and arbitrate pursuant to such arbitrator's rules. The party receiving notice of arbitration will respond in writing by certified mail return receipt requested within twenty (20) days. If you demand arbitration, you must inform us in your demand of the arbitration organization you have selected or whether you desire to select a local arbitrator. If related third parties or we demand arbitration, you must notify us within twenty (20) days in writing by certified mail return receipt requested of your decision to select an arbitration organization or your desire to select a local arbitrator. If you fail to notify us, then we have the right to select an arbitration organization. The parties to such dispute will be governed by the rules and procedures of such arbitration organization applicable to consumer disputes, to the extent those rules and procedures do not contradict the express terms of this Loan Agreement or the Arbitration Provision, including the limitations on the arbitrator below. You may obtain a copy of the rules and procedures by contacting the arbitration organization listed above.

5. Regardless of who demands arbitration, we will advance your portion of the expenses associated with the arbitration, including the filing, administrative, hearing and arbitrator's fees ("Arbitration Fees"). Throughout the arbitration, each party shall bear his or her own attorneys' fees and expenses, such as witness and expert witness fees. The arbitrator shall apply applicable substantive law consistent with the FAA, and applicable statutes of limitation, and shall honor claims of privilege recognized at law. The arbitration hearing will be conducted in the county of your residence, or within 30 miles from such county, or in the county in which the transaction under this Loan Agreement occurred, or in such other place as shall be ordered by the arbitrator. The arbitrator may decide, with or without a hearing, any motion that is substantially similar to a motion to dismiss for failure to state a claim or a motion for summary judgment. In conducting the arbitration proceeding, the arbitrator shall not apply any federal or state rules of civil procedure or evidence. If allowed by statute or applicable law, the arbitrator may award statutory damages and/or reasonable attorneys' fees and expenses. If the arbitrator renders a decision or an award in your favor resolving the dispute, then you will not be responsible for reimbursing us for your portion of the Arbitration Fees, and we will reimburse you for any Arbitration Fees you have previously paid. If the arbitrator does not render a decision or an award in your favor resolving the dispute, then the arbitrator shall require you to reimburse us for the Arbitration Fees we have advanced, not to exceed the amount which would have been assessed as court costs if the dispute had been resolved by a state court with jurisdiction, less any Arbitration Fees you have previously paid. At the timely request of any party, the arbitrator shall provide a written explanation for the award. The arbitrator's award may be filed with any court having jurisdiction.

6. All parties, including related third parties, shall retain the right to seek adjudication in General District Court, as defined in Code of Virginia Title 16.1 Chapter 4.1, for disputes within the scope of such tribunal's jurisdiction. If you are successful in an action against us brought in General District Court, then pursuant to the Code of Virginia Title 6.1, Chapter 18, §6.1-469, you shall recover reasonable attorney's fees, expert witness fees and court costs incurred by bringing such action. Any dispute, which cannot be adjudicated within the jurisdiction of a General District Court, shall be resolved by binding arbitration. Any appeal of a judgment from a General District Court shall be resolved by binding arbitration. Furthermore, nothing in this Arbitration Provision shall limit the right of you or us (a) to foreclose against the Motor Vehicle by the exercise of any power under this Agreement or under applicable law, (b) to exercise self-help remedies such as set off or repossession, or (c) to obtain provisional or ancillary remedies such as pre-judgment seizure of property or injunctive relief, or to seek or obtain any other traditional equitable relief which does not claim money damages from a court having jurisdiction. The institution and maintenance by you or us of any action set forth in this Paragraph 6 shall not constitute a waiver of the right to submit any dispute to arbitration, including any counterclaim asserted.

7. This Arbitration Provision is made pursuant to a transaction involving interstate commerce and shall be governed by the FAA. If a final non-appealable judgment of a court having jurisdiction over this transaction finds, for any reason, that the FAA does not apply to this transaction, then our agreement to arbitrate shall be governed by the arbitration law of the Commonwealth of Virginia.

8. This Arbitration Provision is binding upon and benefits you, your respective heirs, successors and assigns. The Arbitration Provision is binding upon and benefits us, our successors and assigns, and related third parties. The Arbitration Provision continues in full force and effect, even if your obligations have been paid or discharged through bankruptcy. The Arbitration Provision survives any termination, amendment, expiration or performance of any transaction between you and us and continues in full force and effect unless you and we otherwise agree in writing.

9. **OPT-OUT PROCESS.** You may choose to opt out of this Arbitration Provision but only by following the process set-forth below. If you do not wish to be subject to this Arbitration Provision, then you must notify us in writing within thirty (30) calendar days of the date of this Agreement at the following address: P.O. Box 2038 Cleveland, TN 37320 Attn: Legal Dept., Chris Wilson. Your written notice must include your name, address, Account number, the date of this Agreement, and a statement that you wish to opt out of the Arbitration Provision. If you choose to opt out, then your choice will apply only to this Agreement.

Any comments or questions may be directed to Customer Service at the following toll-free number: 1-800-611-9432

## YOUR BILLING RIGHTS - KEEP THIS NOTICE FOR FUTURE USE
This notice contains important information about your rights and our responsibilities under the Fair Credit Billing Act.

### Notify Us In Case of Errors or Questions About Your Bill
If you think your bill is wrong, or if you need more information about a transaction on your bill, write us on a separate sheet at P.O. Box 2038 Cleveland, TN 37320 Attn: Legal Dept., Chris Wilson. Write to us as soon as possible. We must hear from you no later than 60 days after we sent you the first bill on which the error or problem appeared. You can telephone us, but doing so will not preserve your rights.
In your letter, give us the following information:
- Your name and account number;
- The dollar amount of the suspected error;
- Describe the error and explain, if you can, why you believe there is an error. If you need more information, describe the item amount you are not sure about.

### Your Rights and Our Responsibilities After We Receive Your Written Notice
We must acknowledge your letter within 30 days, unless we have corrected the error by then. Within 90 days, we must either correct the error or explain why we believe the bill was correct. After we receive your letter, we cannot try to collect any amount you question, or report you as delinquent. We can continue to bill you for the amount you question, including finance charges, and we can apply any unpaid amount against your credit limit. You do not have to pay any questioned amount while we are investigating, but you are still obligated to pay the parts of your bill that are not in question. If we find that we made a mistake on your bill, you will not have to pay any finance charges related to any questioned amount. If we didn't make a mistake, you may have to pay finance charges, and you will have to make up any missed payments on the questioned amount. In either case, we will send you a statement of the amount you owe and the date that it is due. If you fail to pay the amount that we think you owe, we may report you as delinquent and proceed to collect that amount. However, if our explanation does not satisfy you and you write to us within ten days telling us that you still refuse to pay, we must tell anyone we report you to that you have a question about your bill. And, we must tell you the name of anyone we reported you to. We must tell anyone we report you to that matter has been settled between us when it finally is. If we don't follow these rules, we can't collect the first $50 of the questioned amount, even if your bill was correct.

**Additional Acknowledgments.** By signing this Agreement, you acknowledge and agree that it was filled in before you signed and that you were provided a completed copy of it. **You further acknowledge that you have read, understand, and agree to all of the terms of this Agreement, including the above "Waiver of Jury Trial and Arbitration Provision."**

_____  Approved Cash Advance Corp. d/b/a Approved Cash Advance
Account Holder             By: _____  07/27/2010
                               Its Employee              Date

_____
Co-Account Holder

Any comments or questions may be directed to Customer Service at the following toll-free number: 1-800-611-9432

# Select Your Payment Method

Approved Cash Advance Centers (VA), LLC ("Approved") offers you two methods for making payments under your Motor Vehicle Equity Line of Credit Agreement and Plan dated  07/27/2010  ("MVELOC"). You can choose to repay us by (1) ACH Authorization or (2) Cash.

ACH Authorization is the most convenient method of payment. With an ACH Authorization Approved will simply electronically debit your bank account for the amount owed on each Payment Due Date in accordance with the MVELOC. With this convenient option - YOU NEVER HAVE TO RETURN TO THE STORE TO MAKE A PAYMENT! However, if you want to make a payment in cash you can do so before the Payment Due Date and we will not debit your bank account for that payment.

If you select the Cash option, then you must return to the Approved store location where you set-up your MVELOC and make your payments on or before each Payment Due Date. You must return to the store during its hours of operation.

Please make your selection by signing your choice below:

**PAY WITHOUT RETURNING TO STORE BY AUTOMATIC ELECTRONIC PAYMENTS**

| **CONVENIENCE OPTION** (ACH Authorization) | AUTHORIZATION AGREEMENT FOR DIRECT PAYMENTS (ACH DEBITS) <br><br> You hereby voluntarily authorize us, our successors or assigns, to initiate automatic debit entries ("ACH") to your bank account, the information for which you provided to us in your MVELOC application ("Your Account"). You agree that we will initiate an ACH to Your Account for the Minimum Payment set forth in your Periodic Billing Statement on the Payment Due Date, plus any late fees or other amounts which may be owing. If you are in default and we accelerate your payments in accordance with the MVELOC, then you authorize us to debit Your Account for the entire outstanding balance owing. <br><br> Please note that you have the right to receive notice of all debits varying in amount, and that by signing this ACH Authorization you acknowledge that we have elected to offer you a specified range of amounts for debiting (in lieu of providing the notice of transfers varying in amount). The range of transfers will be either an amount equal to the Minimum Payment plus any late fees you may owe, or the remaining outstanding balance. For any debit outside of this specified range, we will send you a notice. Therefore, by agreeing to the terms of this ACH Authorization you are choosing to only receive notice when a transfer amount exceeds the range specified above. Your bank or financial institution may impose additional fees in connection with a dishonored ACH and you agree that we have no liability regarding any such fee. You may revoke this authorization by notifying us in such time and manner as to afford us and your bank a reasonable opportunity to act on it. If there is any missing or erroneous information in or with your MVELOC Application regarding Your Account, then you authorize us to verify and correct such information. You acknowledge that by signing below you are assenting to this ACH Authorization. <br><br> CUSTOMER SIGNATURE _____ |
|---|---|

(ACH section crossed out)

**RETURN TO STORE EACH MONTH AND MAKE CASH PAYMENTS**

| **PAY AT STORE OPTION** (Cash) | If you select this payment option, then you agree to repay us in cash. You must make your payment by returning to the Approved location where you entered into the MVELOC on each Payment Due Date prior to the close of business. <br><br> CUSTOMER SIGNATURE _[signature]_ |
|---|---|

09382_00/0501/HBS-000158_2

04/13/2011 12:28 0181 PAGE 05

04-13-2011 01:47 PM FAX24 PUBLIC FAX SERVICE From: To: 8048613368 Page 5